### YAMIE et al. v. EDWARDS et al.

No. 20067.   Opinion Filed June 16, 1931.

J. B. Campbell, W. W. Pryor, J. Ralph Knight, and Etha Lawrence, for plaintiffs in error.

Robert Burns, V. R. Biggers, T. J. Flannelly, Paul B. Mason, and Anglin & Stevenson, for defendants in error.

HEFNER, J. This is an action by Willie Yamie and others against I. N. Edwards, and others, to recover possession of and quiet title to 160 acres of land located in Seminole county. The land involved is the allotment of Josiah Canard, a Seminole Indian, who was deceased at the time of the allotment. Both plaintiffs and defendants claim title to the land as his heirs. The case was tried to the court on an agreed statement of facts, and resulted in a judgment in favor of defendants.

It is agreed that Josiah Canard, the allottee, died on May 13, 1901; that he left surviving him his widow, Betsy Canard, who was a member of the Seminole Tribe of Indians, and a son, George Joseph, who is an enrolled member of the Creek Tribe, and who was the father of three children, all of whom were enrolled as Seminoles.

Plaintiffs contend that upon the death of Josiah Canard the land descended to Betsy Canard, his surviving wife, and that upon her death it descended to them as her heirs. Defendants contend that the land, upon the death of the allottee, descended to his grandchildren, and upon their death to their heirs. The allottee having died in 1901, the devolution of his estate must be determined in accordance with the provisions of the Seminole Indian Supplemental Agreement. Subdivision 2, Act June 2, 1900, 31 Stat L. 250, provides:

"If any member of the Seminole Tribe of Indians shall die after the 31st day of December, 1899, the lands, money, and other property to which he would be entitled if living, shall descend to his heirs, who are Seminole citizens, according to the laws of descent and distribution of the state of Arkansas, and be allotted and distributed to them accordingly."

It is agreed by all parties that George Joseph, surviving son of Josiah Canard, could not inherit any portion of his allotment, because he was enrolled as a Creek Indian.

Plaintiffs further contend that, the allottee having left no kindred capable of inheriting, the allotment, under the above provision of the Seminole Treaty and applicable provisions of the Arkansas statute, passed to his surviving wife; that the grandchildren of the allottee, although enrolled as Seminoles, did not inherit, for the reason that their father was still living at the time the descent was cast, and in their brief say:

"There is but one question presented by this appeal: Could the Seminole grandchildren of Josiah Canard, who trace their descent from Josiah Canard through their Creek father, a surviving son of said deceased allottee, inherit the allotment of Josiah Canard as his heirs at law when said surviving son, their father, was barred from inheriting the allotment in his own right?"

Defendants contend that the rule relied on by plaintiffs is changed by virtue of section 2527, ch. 49, Mansfield's Digest of the Statutes of Arkansas, which provides:

"In making title by descent, it shall be no

bar to a demandant that any ancestor through whom he derives his descent from the intestate is, or has been, an alien."

It is their contention that under this section the grandchildren of Josiah Canard took the inheritance notwithstanding it was necessary to trace their relationship through a living ancestor and in support thereof cite the case of Ross v. Wertz, 70 Okla. 56, 172 Pac. 968. It was contended there as here that a person cannot inherit if it be necessary to trace his relationship to the intestate through a living ancestor. In passing upon that question, this court said:

"It would follow, therefore, that, if Betsy Primous left no blood kinsmen who were Creek citizens or Creek descendants of such citizens, her husband, Joe Primous, would take the inheritance, he being a Creek citizen. However, the evidence shows that there are other claimants not only related by blood, but qualified by Creek citizenship. The defendant in error urges that such kinsmen cannot take, for the reason that they can only trace their relationship to the intestate through noncitizen blood. Upon a reading of the section, it will be discovered that no such requirement was contemplated. It would be impossible, in this case, to find any one related to the defendant through ancestral Creek blood, for no such blood coursed her veins. The defendant in error is wrong for a further reason. Section 2527 of chapter 49, Mansfield's Digest, reads: 'In making title by descent, it shall be no bar to a demandant that any ancestor through whom he derives his descent from the intestate is, or has been, an alien.'

"Missouri has an identical statute as to alienage of ancestors, and in Sullivan v. Burnett, 105 U. S. 334, 26 L. Ed. 1124, the Supreme Court of the United States, construing the section, says: 'In making title by descent, it may be that his ancestor is or was an alien, without inheritable blood, either at common law or by statute. That fact would ordinarily constitute an insuperable difficulty in the way of his taking or holding the estate. But the statute elsewhere interposes in his behalf, and says that he shall not be barred in tracing his descent from the intestate, by reason of the fact that any ancestor is or has been an alien—language broad enough to include a living as well as a dead progenitor.'

"It is also held in Campbell v. Campbell, 58 N. C. (5 Jones' Eq.) 246, that children of a living alien sister of the decedent may take the inheritance, notwithstanding they trace their relationship to the decedent through their mother who is an alien. These citations meet the contention of defendant in error, and also answer the suggestion of the

plaintiff in error that the children of Joe Ross cannot inherit because their father is living."

Plaintiffs say that this case is not controlling, for the reason that the Creek Supplemental Agreement specifically puts in force chapter 49, Mansfield's Digest; that the Seminole Supplemental Agreement puts in force the laws of descent and distribution of the state of Arkansas; that section 2527 of chapter 49 of Mansfield's Digest was not in force in the state of Arkansas at the time of the adoption of the agreement. That this section cannot, therefore, be considered in determining this case. We do not agree with this contention. This court in effect held that chapter 49 of Mansfield's Digest was put in force by the adoption of the Supplemental Seminole Agreement, and in the case of Reed v. Narcomey, 131 Okla. 153, 268 Pac. 721, in discussing the section here involved, said:

"It is not useful to discuss chapter 49, Mansfield's Digest of the Statutes of Arkansas. It was the chapter incorporated by the loosely drafted reference, 'According to the laws of descent and distribution of the state of Arkansas,' in the treaty, as a special statute of descent and distribution as to lands allotted as here. * * *

"The proviso operated as a modification or limitation of the applicable provisions of said chapter 49 to the extent that the father took no part of the inheritance."

This chapter having been placed in force by the agreement, it becomes immaterial whether or not the section in question was in force in the state of Arkansas at the time of the adoption of the agreement. Gidney v. Chappell, 241 U. S. 99, 60 L. Ed. 910.

Plaintiffs further contend that the rule announced in Ross v. Wertz, supra, is wrong, and that the case should be overruled. The opinion in that case became the law of this state in 1918 after a petition for writ of certiorari was denied by the United States Supreme Court October 28, 1918. 63 L. Ed. 426. Since that time the rule announced therein has been the law in this state, and doubtless many business transactions have been consummated in reliance thereon, and we do not feel that we would be justified at this time in announcing a different rule.

The judgment is affirmed.

LESTER, C. J., and RILEY, CULLISON, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and SWINDALL and ANDREWS, JJ., absent.